Connie Jo AUSTIN; Steven D. Snyder, Plaintiffs–Appellees,

v.

Joe HAMILTON, Defendant–Appellant,

and

Edward Martinez; Richard Maya; Charles Brown; Individually and as Officials of the U.S. Customs Services and U.S. INS; United States of America, Defendants.

No. 90–2024.

United States Court of Appeals, Tenth Circuit.

Sept. 24, 1991.

Marshall I. Yaker and E.H. Williams, El Paso, Tex., for defendant-appellant.

Michael W. Lilley of Lilley & Macias, P.A., Las Cruces, N.M., for plaintiffs-appellees.

Before McKAY, SEYMOUR and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

■ Defendant Joe Hamilton appeals[1] from an order of the United States District Court for the District of New Mexico denying a motion for summary judgment filed by Hamilton and three other federal officers on qualified immunity grounds. We have interlocutory appellate jurisdiction under *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), even though the district court based its denial of the motion on a finding that disputed material facts exist in the case. *See DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 719 (10th Cir.1988). For the reasons set out below, we affirm.

## I.

## BACKGROUND

At least two discrete claims are asserted pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against Hamilton and his individual codefendants: (1) use of excessive force during plaintiffs' arrest and subsequent detention; and (2) detainment of plaintiffs following warrantless arrest for an unreasonably extended duration without a probable cause determination by a judicial officer, along with concomitant refusal of plaintiffs' requests for communication with counsel. In connection with defendants' motion for summary judgment, the parties submitted affidavits recounting their respective recollections of the events surrounding defendants' seizure, search, and detainment of plaintiffs at a port of entry into the United States from Mexico. Plaintiffs' affidavits reflect a twelve-hour episode of unnecessary physical violence

and inhumane treatment, ending in their release without charge by defendants. According to plaintiffs, after a small amount of marijuana was found in their vehicle, they were taken to the port of entry office and secured in handcuffs despite their cooperation with defendants' inquiries and requests. Thereafter, plaintiffs were both repeatedly assaulted without provocation. On at least three occasions, one or the other was struck and knocked to the floor unconscious. They were refused use of the rest room and required to remain all night in the clothes they subsequently soiled. Handcuffs were tightened past the point of feeling. Simple requests for water were gratuitously denied. At no time were plaintiffs formally placed under arrest, allowed to contact counsel, or even told why they were being held.

Defendants' account, on the other hand, reflects reasonable official efforts to handle two unruly and abusive detainees. For example, on several occasions early in their detention, plaintiffs allegedly acted violently toward defendants and were appropriately restrained by increasingly restrictive measures. Toilet facilities were offered but declined. Plaintiffs were placed under arrest and eventually interviewed by internal affairs officers, who had been notified of the assaults on defendants. Some four hours after the arrival of the internal affairs officers, plaintiffs were released. Although no federal charges were ever brought against plaintiffs on the basis of any of these events, they were cited by a state trooper for possession of marijuana.

The district court rejected defendants' pretrial assertion of qualified immunity as to all of plaintiffs' allegations with the following statement:

"In their affidavits plaintiffs claim that defendants assaulted them without cause and otherwise subjected them to cruel and inhuman treatment during over twelve hours of detention. The defendants by their affidavits deny any such

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.

R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

**1158** 

conduct. The dispute in facts between the plaintiffs' version of their treatment during the detention and the defendants' version precludes summary judgment.

"A defense of qualified immunity will not lie at this point in light of the type of conduct with which plaintiffs charge defendants."

District Court Order filed December 8, 1989, at 1. Our review of the court's determination is de novo. *Snell v. Tunnell*, 920 F.2d 673, 675 (10th Cir.1990).

## II.

## EXCESSIVE FORCE

 The district court's treatment of the qualified immunity issue in connection with plaintiffs' excessive force claim was entirely proper. It is only by ignoring the particularized allegations of deplorable violence and humiliation advanced by plaintiffs that defendants are able to argue for qualified immunity. Considering the parties' hotly disputed sworn accounts in the light most favorable to plaintiffs, *see Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir.1987), we hold that under either a fourth amendment or substantive due process standard, see part B infra, "a reasonable officer could [not] have believed the manner of plaintiff[s'] arrest and detention in this case to be constitutionally permissible, in light of clearly established law and the information defendants possessed at the time." *Martin v. Board of County Comm'rs*, 909 F.2d 402, 405 (10th Cir.1990) (citing *Anderson v. Creighton*, 483 U.S. 635, 640–41, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)); *see also id.* at 407 n. 5. The district court therefore did not err in denying summary judgment on qualified

immunity grounds. *See Zuchel v. Spinharney*, 890 F.2d 273, 274 (10th Cir.1989); *see also Snell*, 920 F.2d at 701–02 (qualified immunity may be inappropriate due to factual conflict sufficiently material to require resolution of constitutional claims at trial).

 While this conclusion is not problematic, there is an analytical snarl regarding the operative constitutional standards that must be untangled before the case is put before the jury for resolution.[2] As a general matter, claims based on the use of excessive force during *arrest* are now governed by the objective reasonableness standard of the fourth amendment. *See Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). Here, however, we must determine (1) what constitutional standard governs *post-arrest* excessive force; and (2) what constitutional standard governs qualified immunity under the circumstances of this case. We will address each of these questions in turn.

### A. Constitutional Standard for Post–Arrest Excessive Force

We must first place the objectionable events in this case somewhere along the custodial continuum running through initial arrest or seizure, post-arrest but pre-charge or pre-hearing custody, pretrial detention, and post-conviction incarceration; and then determine what constitutional protection controls at which particular juncture. *See generally id.* at 393–94, 109 S.Ct. at 1870–71 (all excessive force claims are not governed by single generic standard; analysis therefore begins with identification of specific constitutional right infringed by alleged application of force);

---

**2.** Identification of the controlling constitutional principles and evaluation of the defendant's compliance therewith is, as a matter of analysis, the threshold issue to be resolved when qualified immunity is asserted. *Spielman v. Hildebrand*, 873 F.2d 1377, 1385 (10th Cir.1989). We have, on occasion, simply affirmed a district court's ruling on qualified immunity without explicitly identifying in our opinion the operative constitutional standards, *see, e.g., Martin*, 909 F.2d at 407 n. 5 (qualified immunity rejected though controlling constitutional standard not designated, because conduct violated any

potentially applicable standard); *see also Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir.1988) (noting that "courts should ordinarily determine the existence and character of the underlying constitutional violation(s) before proceeding to the immunity question," but, because of "special nature of the violations asserted," deciding latter question without former determination). In the present pretrial setting, however, where the district court has not identified the controlling principles and the parties dispute the matter, we consider it especially appropriate to discuss the particular constitutional standards.

*Titran v. Ackman,* 893 F.2d 145, 147 (7th Cir.1990) (recognizing different points along custodial continuum to which variable constitutional standards attach). Unless we simply assume the rather odd position that plaintiffs' initial arrest actually took some twelve hours to accomplish, as for example might be the case in an extended chase of the sort encountered in cinema, the constitutional proscription on excessive force operative at the second custodial stage must be identified and applied to at least some of defendants' conduct.

The Supreme Court has "not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive force beyond the point at which arrest ends and pretrial detention begins," *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10, and the lower courts have not reached a consensus. Although the *Graham* opinion avoided a direct pronouncement on this particular issue, the Court's recognition of the broad applicability of fourth amendment standards to excessive force claims in the arrest context has played a role in the development of a standard applicable to post-arrest police conduct. Prior to *Graham,* the circuits expressed sharply divergent views, some squarely rejecting the applicability of fourth amendment principles once the initial seizure of a suspect is completed. *Compare Wilkins v. May,* 872 F.2d 190, 192–95 (7th Cir.1989) (fourth amendment protection ceases and substantive due process begins upon completion of initial seizure), *cert. denied,* 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990), *and Justice v. Dennis,* 834 F.2d 380, 382–83 and n. 4 (4th Cir.1987) (en banc) (substantive due process standards equally applicable to excessive force claims brought in post-arrest custody, pretrial detention, and post-conviction incarceration contexts), *vacated,* 490 U.S. 1087, 109 S.Ct. 2461, 104 L.Ed.2d 982 (1989), *with Robins v. Harum,* 773 F.2d 1004, 1009–10 (9th Cir.1985) (fourth amendment protection persists post-arrest "throughout the time the arrestee is in the custody of the arresting officers," by virtue of legal fiction of "continuing seizure")

*and McDowell v. Rogers,* 863 F.2d 1302, 1303–04, 1306 (6th Cir.1988) (citing *Robins* and applying fourth amendment standard to claim arising out of officer's use of nightstick on suspect already under warrantless arrest, subdued, and handcuffed).

Subsequent to its decision in *Graham,* the Court vacated and remanded *Justice* for reconsideration in light of *Graham*'s fourth amendment analysis. In *Justice,* the Fourth Circuit had employed a due process standard in evaluating a claim for excessive force involving, among other things, the use of mace against a physically restrained detainee during his transport back to jail following a probable cause hearing. *See Justice,* 834 F.2d at 381–83. If, after *Graham,* the applicability of the fourth amendment is at least a debatable matter in such circumstances, it is certainly an open question in the present pre-hearing context. *See also Henson v. Thezan,* 717 F.Supp. 1330, 1335–36 (N.D.Ill.1989) (recognizing that "*Graham* ... appears to undercut *Wilkins*' view that a seizure ends at the moment the police gain custody and control over the suspect," and holding that fourth amendment continues to apply after warrantless arrest until detainee is afforded probable cause hearing). *But see Titran,* 893 F.2d at 146–47 (post-*Graham* Seventh Circuit decision following *Wilkins* with no recognition of any inconsistency with *Graham* ).

The Fourth Circuit, which has not yet issued a decision in *Justice* since the Supreme Court's remand, chose not to address the matter in another post-*Graham* case where circumstances permitted a decision on grounds not involving a distinction between due process and fourth amendment standards. *See United States v. Cobb,* 905 F.2d 784, 788 n. 7 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991); *see also Wisniewski v. Kennard,* 901 F.2d 1276, 1277 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 309, 112 L.Ed.2d 262 (1990). On the other hand, the Second Circuit, following *Graham,* has indicated that fourth amendment strictures persist after arrest to protect detainees from their arresting officer's use

of excessive force up until arraignment or formal charge. *See Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir.1989). The Second and Ninth Circuits also have relied on *Graham* in holding that fourth amendment standards govern the analysis of claims seeking redress for post-arrest use of excessive force in connection with searches incident to the arrest. *See Hammer v. Gross*, 884 F.2d 1200, 1204 (9th Cir.1989), *vacated en banc on other grounds*, 932 F.2d 842, 845 n. 1 and 850–51 (1991) (vacating panel opinion but noting agreement regarding application of fourth amendment standards under *Graham*); *Calamia v. City of New York*, 879 F.2d 1025, 1034–35 (2d Cir.1989) (construed in *Powell*, 891 F.2d at 1044). We have not yet resolved which direction to take. *See Culver v. Town of Torrington*, 930 F.2d 1456, 1460 (10th Cir.1991).

■ As discussed in part III of this opinion, the courts apply a fourth amendment standard to assess the constitutionality of prolonged warrantless post-arrest custody, requiring release or a judicial determination of probable cause after a reasonable period allowed for completion of procedures incident to arrest. *See infra* at 15. While this authority is not conclusive on the issue under review, which concerns the condition rather than the length or legality of such custody, we consider it persuasive in the absence of other guiding principles.[3]

We conclude that just as the fourth amendment's strictures continue in effect to set the applicable constitutional limitations regarding both duration (reasonable period under the circumstances of arrest) and legal justification (judicial determination of probable cause), its protections also persist to impose restrictions on the treatment of the arrestee detained without a warrant. *Accord Henson*, 717 F.Supp. at 1335–36. *Cf. Powell*, 891 F.2d at 1044 ("We think the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested [pursuant to a warrant] is arraigned or formally charged, and remains in the custody (joint or sole) of the arresting officers."). *See generally Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1299 (E.D.N.C.1989) ("It is not easy to draw a bright demarcation line except in those cases where it is evident that an appearance before a judicial official follows immediately after an arrest."). This conclusion controls our analysis of the present case, because the incidents alleged occurred prior to any probable cause hearing. In fact, plaintiffs were never formally charged by defendants or brought before a judicial officer.

## B. Qualified Immunity

■ In assessing a defense of qualified immunity, the court must determine

---

3. In *Wilkins* the Seventh Circuit cited two "practical objections" to use of the fourth amendment in the post-arrest context, both of which we reject. First, it noted that the standard fourth amendment inquiry is whether the force used to seize and restrain a suspect was reasonable in relation to the danger posed to the arresting officers and surrounding community, and concluded that since this issue is mooted once a suspect is in custody, fourth amendment law is inapt. *Wilkins*, 872 F.2d at 192–93. Because we disagree that seizure or arrest effects a pertinent, qualitative alteration in the justifications for force (an arrestee remains a risk to officers, nearby persons or property and, as an escape threat, the community at large), we also disagree that traditional fourth amendment analysis is somehow ill-suited here. In addition, the court's view in *Wilkins'* was influenced by concerns specific to post-arrest coercive interrogation, which, it correctly noted, "the text, history, and judicial interpretations of the Fourth Amendment do not illuminate," *id.* at 194, but

in this respect its evaluation of fourth amendment standards was distracted by concerns pertinent to due process. *See Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir.), *cert. denied*, 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985); *United States v. Rullo*, 748 F.Supp. 36, 42 (D.Mass. 1990).

*Wilkins'* second objection was that application of the fourth amendment "could lead to an unwarranted expansion of constitutional law." *Id.* at 194. This concern evidently followed from the perception that "[t]here are no obvious limiting principles within the amendment itself" that would foreclose, for example, the absurdity of constitutional redress against an officer who simply "st[u]ck his tongue out at [an arrestee]." *Id.* We are neither persuaded nor perturbed by this point. It could be made in any excessive force context and the legal standard of reasonable conduct, with which judges and juries routinely grapple in a host of settings, has served well to keep such trivial incivilities from clogging the federal courts.

the objective reasonableness of the challenged conduct by reference to the law clearly established at the time of the alleged constitutional violation. *Snell*, 920 F.2d at 696. As this court has acknowledged on several occasions, a complication arises in any case involving excessive but nondeadly force used in an arrest carried out before *Graham*'s publication in 1989, when the Supreme Court made it clear that the fourth amendment and not substantive due process provided the controlling standard. Prior to that date, the circuits disagreed over whether to adopt the fourth amendment standard first applied in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), to a claim involving the seizure of a fleeing felon through the use of deadly force, or to continue to apply the more onerous substantive due process standard traditionally applied to allegations of nondeadly force employed in connection with an arrest or seizure,[4] *see Martin*, 909 F.2d at 407 n. 5.

In a case presenting a claim for excessive but nondeadly force already limited procedurally to substantive due process principles, we followed the latter course, although we did not foreclose pursuit of valid fourth amendment claims in this context if properly raised and preserved. *See Trujillo v. Goodman*, 825 F.2d 1453 at 1457–58 and n. 1 (10th Cir.1987). In a case where a fourth amendment claim was asserted, we recently recognized that:

"Long before *Graham*, the Supreme Court set forth the salient standard for governing the situation that developed [in this case]: law enforcement officers must be 'objectively reasonable' in their searches and seizures. *See Terry v. Ohio*, 392 U.S. 1, 20–27, 88 S.Ct. 1868, 1879–83, 20 L.Ed.2d 889 (1968) (investigative stop); *Tennessee v. Garner*, 471 U.S. 1, 7–8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (§ 1983 action for excessive force evaluated under the Fourth Amendment: 'reasonableness depends on not only when a seizure is made, but also how it is carried out'). That *Graham* directed lower courts to apply Fourth Amendment analysis to § 1983 claims of excessive force during arrest is not evidence that such claims were previously foreclosed.

"Since the plaintiffs pled and pursued their claim under the Fourth Amendment, the district court properly applied the Fourth Amendment's 'objective reasonableness' standard to the officers' alleged conduct. That standard was clearly established at the time the challenged incident took place."

*Dixon v. Richer*, 922 F.2d 1456, 1461–62 (10th Cir.1991). We have thus held that in post-*Graham* cases arising out of pre-*Graham* conduct, we will employ fourth amendment standards to assess qualified immunity defenses raised against excessive force claims premised on the fourth amendment, and rely on substantive due process standards for such purposes where fourth amendment claims have not been specifically asserted. *Compare id.* at 1460–62. (fourth amendment) *with Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990) (substantive due process). *See generally Martin*, 909 F.2d at 407 n. 5 (noting flux in pre-*Graham* law and holding defendant officers' conduct clearly violative of either constitutional standard).

Because plaintiffs in this case alleged a fourth amendment violation in their complaint, under *Dixon* the fourth amendment "objective reasonableness" test governs the determination of the qualified immunity defense as well as the substantive

---

4. The time sequence involved here obviously also provokes questions regarding the retroactive effect of the *Graham* decision. In *Mitchell v. City of Sapulpa*, 857 F.2d 713 (10th Cir.1988), we held that *Garner* should not be applied retroactively. That conclusion was based in large part on the recognition that *Garner*'s "holding certainly represents a decision on 'an issue of first impression whose resolution was not clearly foreshadowed.'" *Id.* at 718 (quoting *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)). In contrast, *Graham*'s application of *Garner*'s fourth amendment standard to excessive force in arrest cases generally only "ma[d]e explicit what was implicit in *Garner*'s analysis." *Graham*, 109 S.Ct. at 1871. For this reason, the Ninth Circuit recently held that although *Graham* overruled circuit precedent, the decision should nevertheless be given retroactive effect. *See Reed v. Hoy*, 909 F.2d 324, 327–28 (9th Cir.1989). We agree with this analysis.

constitutional issues raised in connection with defendants' warrantless *arrest* of plaintiffs. However, our holding earlier in this opinion that fourth amendment protections persist *post-arrest* obviously does not reflect law clearly established at the time of the events involved here. Consequently, the substantive due process principles that in the past generally governed claims for post-arrest, pretrial violence or abuse, *see Trujillo*, 825 F.2d at 1458; *see, e.g., Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1378–79 (10th Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985), provide the appropriate yardstick for the evaluation of defendants' claim of qualified immunity for their post-arrest conduct.

To summarize, then, the following standards apply to plaintiffs' excessive force allegations and the individual defendants' correlative assertion of qualified immunity. The constitutionality of defendants' entire course of conduct should be evaluated under the fourth amendment. Assessment of defendants' qualified immunity defense, on the other hand, involves two distinct constitutional standards, because the fourth amendment law we now recognize as controlling up until the arrested suspect's first judicial hearing was not, at the time, established with equal clarity for the first two stages along the custodial continuum. Thus, fourth amendment standards govern the evaluation of defendants' qualified immunity defense for conduct in connection with plaintiffs' initial arrest, while substantive due process principles control the issue as to any excessive force employed thereafter. It is with this understanding that we affirm the district court's rejection of qualified immunity with respect to the excessive force claim asserted by plaintiffs on the disputed facts of this case.

## III.

### PROLONGED WARRANTLESS DETENTION

█ The remaining issues do not implicate unsettled law or involve distinctions between the constitutional standards governing plaintiffs' claims and defendants'

qualified immunity defense. Plaintiffs' allegations of unreasonably prolonged warrantless detention invoke settled fourth amendment principles predating the circumstances of this case. *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975) ("the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest"); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1350–52 (7th Cir.1985); *Bernard v. City of Palo Alto*, 699 F.2d 1023, 1024–27 (9th Cir.1983); *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1140–41 (4th Cir.1982).

Although the Supreme Court has recently held that detentions for less than forty-eight hours may be considered reasonable in general, *see County of Riverside v. McLaughlin*, —— U.S. ——, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991), a detention for a lesser period may still be unconstitutional "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are . . . a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.* In evaluating the reasonableness of the delay, "courts must allow a substantial degree of flexibility," *id.*, giving due consideration to the unavoidable delays resulting from "handling late-night bookings where no magistrate is readily available," *id.*

The reasonableness of the detention is a matter for the trier of fact, *Kanekoa v. City & County of Honolulu*, 879 F.2d 607, 611–12 (9th Cir.1989); *Moore*, 754 F.2d at 1351–52, who must determine "whether the period of detention is reasonable in light of all the circumstances accompanying arrest, including transportation, booking, filing, photographing, fingerprinting, identity verification, and criminal record 'wanted' checks, as well as the number of individuals to be processed with the detainee in question." *Patrick v. Jasper County*, 901 F.2d 561, 567 (7th Cir.1990); *see Kanekoa*, 879 F.2d at 611. Under the circumstances of this case, in which the specific facts are unsettled and disputed regarding both the

length and the reasons for the delay, the district court's denial of summary judgment was proper.[5] *Compare Kanekoa,* 879 F.2d at 609 (reasonableness of intoxicated arrestees' detention for periods of nine and nineteen hours determined by jury) *and Moore,* 754 F.2d at 1350–52 (summary judgment reversed where four-hour detention following misdemeanor arrest raised fact issue regarding reasonableness) *with Patrick,* 901 F.2d at 570 (summary judgment affirmed where "there is ample evidence in the record that [plaintiff's] four-hour detention is attributable to the processing ... of the sixty to eighty individuals brought to the [county jail] in connection with the 'drug bust' [that netted plaintiff]").

For the foregoing reasons, the order of the United States District Court for the District of New Mexico is AFFIRMED and the cause is REMANDED for further proceedings consistent herewith.

---

**5.** We note that a major form of permissible prehearing delay discussed in *McLaughlin, i.e.,* time consumed by pretrial proceedings conducted in combination with the arrestee's probable cause hearing, *see id.* 111 S.Ct. at 1669–71, is evidently not a factor here, as no judicial proceedings of any sort followed plaintiffs' arrest.