Donald FROHMADER, Plaintiff–
Appellant,

v.

Deputy D. WAYNE, Defendant–Appellee.

No. 91–1249.

United States Court of Appeals,
Tenth Circuit.

March 12, 1992.

Manuel M. Weiss of Melat, Pressman, Ezell & Higbie, Colorado Springs, Colo., for plaintiff-appellant.

Phillip A. Vaglica, Ann A. Maenpaa, Asst. County Attys., Office of the County Atty. of El Paso County, Colorado Springs, Colo., for defendant-appellee.

Before MOORE, TACHA, and BRORBY, Circuit Judges.

PER CURIAM.

Plaintiff Donald Frohmader brought this action against Defendant Deputy D. Wayne alleging federal claims under 42 U.S.C. § 1983 for excessive force and inadequate medical attention and pendent state law claims for assault, battery, outrageous conduct, and negligence. The district court, rejecting the recommendation of a magistrate judge, granted summary judgment in favor of Wayne on the federal claims and dismissed the pendent claims without prejudice. *Frohmader v. Wayne,* 766 F.Supp. 909, 913–17 (D.Colo.1991). The district court concluded that Frohmader's evidence failed to establish a substantive constitutional violation and, alternatively, Wayne

was entitled to qualified immunity. *Id.* at 914–17. We reverse in part and affirm in part.[1]

## I.

## BACKGROUND

On August 4, 1987, at approximately 9:00 p.m. Frohmader was contacted by two members of the El Paso County Sheriff's Department. These officers attempted to serve a summons and complaint on Frohmader for harassment. Frohmader refused to sign the summons, and a physical altercation ensued. Frohmader was eventually restrained and arrested.

Frohmader was booked at the El Paso County Jail at approximately 9:50 p.m. It was at this point that Frohmader came into contact with Wayne. What happened next is a matter of some dispute. In the record are affidavits from various witnesses, including Wayne, and deposition testimony from Frohmader and Wayne.

Under Wayne's account, Frohmader became very belligerent and uncooperative when he was placed alone in a holding cell. According to Wayne, Frohmader was initially restrained with a "belly belt" and handcuffs. Wayne testified that Frohmader's behavior worsened, and this led to full restraints being applied to Frohmader, including leg irons and a helmet. The helmet was necessary, according to Wayne, because Frohmader had attempted to hit his head against the wall in the cell.

Frohmader does not deny that he was uncooperative after being placed in the cell. However, Frohmader explains that he suffered a claustrophobic reaction, merely began to yell to get someone's attention, and Wayne then removed him from the cell. Frohmader testified that he advised Wayne that he was claustrophobic and agoraphobic, and he handed Wayne two business cards from his personal mental health providers, to which Wayne responded with an

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

obscenity. According to Frohmader, no progressive restraint occurred. Instead, Frohmader claims that after advising Wayne of his claustrophobia and agoraphobia, he was thrown to the floor by Wayne and other unidentified sheriff deputies, kicked, fully restrained by handcuffs and leg irons, placed in a helmet, and thrown back into his cell landing on his face and chest.

Wayne admits that Frohmader did complain of claustrophobia and agoraphobia. However, according to Wayne, these conditions were asserted by Frohmader before, not after, being placed in the cell. Wayne testified that he elected not to contact Frohmader's mental health providers because it was late and, instead, instructed the jail's emergency medical technician (EMT) to call the jail's on-call mental health professional, Margaret Severson, to inform her of Frohmader's asserted condition. Severson did not consider her intervention necessary and saw Frohmader the next morning. Wayne left the jail at 11:00 p.m. when his shift ended.

## II.

## ANALYSIS

We review a grant of summary judgment under the same standard applied by the district court. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990). Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence in the record in the light most favorable to the party opposing the motion. *Lucas*, 909 F.2d at 420.

*Excessive Force*

■ All excessive force claims are not governed by a single generic standard. Our analysis must begin with identification of the specific constitutional right infringed by Wayne's alleged application of force.

2. Although this case arises out of pre-*Graham* conduct, we apply *Graham* retroactively. *Austin*, 945 F.2d at 1161 n. 4.

The district court applied the Fourteenth Amendment substantive due process standard. *Frohmader*, 766 F.Supp. at 913–14. However, shortly after the district court's decision, this court, in *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir.1991), held that claims of post-arrest excessive force by arrestees like Frohmader, who are detained without a warrant, are governed by the "objective reasonableness" standard of the Fourth Amendment as set forth in *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989), until they are brought before a judicial officer for a determination of probable cause to arrest.

Under the Fourth Amendment, the question is whether the defendants' actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to underlying intent or motivation. *Id.* at 397, 109 S.Ct. at 1872. Reasonableness must be viewed from the perspective of the defendants on the scene rather than with the "20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872.

■ Applying these principles to this case[2] and considering the parties' hotly disputed sworn accounts in the light most favorable to Frohmader, we hold that there is evidence of official conduct sufficiently reprehensible to constitute a clear violation of the objective reasonableness standard. Under Frohmader's version of the facts, Wayne acted in an assaultive manner even though he was not, at the time, confronted with violent circumstances or even verbal provocation. Therefore, on the record before us, we cannot say that Wayne's behavior was objectively reasonable as a matter of law.

■ Having clarified the controlling constitutional standard for Frohmader's excessive force claim and concluded that Frohmader has substantiated a viable claim for violation of that standard, we must turn to Wayne's assertion of qualified immunity.[3]

3. Identification of the controlling constitutional principles and evaluation of the defendant's compliance therewith is, as a matter of analysis, the threshold question to be resolved when qual-

In assessing a defense of qualified immunity, we must determine the objective reasonableness of the challenged conduct by reference to the law clearly established at the time of the constitutional violation. *Snell v. Tunnell,* 920 F.2d 673, 696 (10th Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). The burden rests with the plaintiff to come forward with facts or allegations to show the violation of a clearly established right. *Id.; Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir.1990).

■ Our holding in *Austin* that Fourth Amendment protections may persist post-arrest obviously does not reflect law clearly established at the time of the events involved here. When Frohmader was arrested, we generally examined claims of post-arrest, pretrial violence and abuse under a substantive due process standard. *See, e.g., Hewitt v. City of Truth or Consequences,* 758 F.2d 1375, 1378–79 (10th Cir.), *cert. denied,* 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). Therefore, Frohmader must show that Wayne's actions constituted an excessive use of force under our former substantive due process standard.

Under the Due Process Clause, the factors relevant to whether the use of force is excessive are: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state officer. *Id.* at 1379. The due process standard is more onerous than the Fourth Amendment reasonableness standard since the former requires, in addition to undue force, personal malice amounting to an abuse of official power sufficient to shock the conscience. *Martin,* 909 F.2d at 407 n. 5.

We conclude that the evidence, viewed in the light most favorable to Frohmader, shows a violation of the substantive due process standard. First, under Frohmader's account, the use of force by Wayne was not necessary. Second, we note that although Frohmader presented no evidence of contusions, lacerations, or damage to bones, he did present evidence of a serious injury. Two physicians, Dr. Carl Osborn and Dr. Bruce H. Peters, stated in deposition testimony that Frohmader suffers from reflex sympathetic dystrophy (RSD) as a result of being handcuffed.[4] Finally, on the issue of Wayne's intent, Frohmader testified that he was told by Wayne that "we are going to fix you" for the altercation which preceded Frohmader's arrest. This statement, which we must accept as true, shows the requisite malice on the part of Wayne.

In order to affirm the district court's disposition of Frohmader's excessive force claim we would essentially have to adopt Wayne's view of the provocation (that Frohmader was belligerent, uncooperative, and hurting himself) and the consequences (that Frohmader received no serious injury) over Frohmader's contrary contentions (that he was not a threat to himself or anyone else, that he was being punished for the altercation which preceded his ar-

---

ified immunity is asserted. *Spielman v. Hildebrand,* 873 F.2d 1377, 1385 (10th Cir.1989). We have, on occasion, simply affirmed a district court's ruling on qualified immunity without explicitly identifying in our opinion the operative constitutional standards. *See, e.g., Martin v. Board of County Comm'rs,* 909 F.2d 402, 407 n. 5 (10th Cir.1990) (qualified immunity rejected although controlling constitutional standard not designated because conduct violated any potentially applicable standard). In the present pretrial setting, however, where the district court applied the wrong principles and the parties dispute the matter, discussion of the particular constitutional standard is appropriate. *Austin,* 945 F.2d at 1158 n. 2.

**4.** The district court viewed this injury as based on prolonged restraint. *Frohmader,* 766 F.Supp. at 914. Therefore, according to the district court, Wayne could not be held liable for such injury because it occurred after his shift ended at 11:00 p.m. *Id.* However, this conclusion ignores the fact that Wayne, under Frohmader's account, participated with other sheriff deputies in the application of the handcuffs in the first place. Whether Wayne's conduct prior to the end of his shift is the proximate cause of injury to Frohmader is a factual question we cannot resolve at this juncture.

rest, and that he suffered serious nerve injury). Courts may not resolve disputed questions of material fact in order to grant summary judgment. As discussed above, courts, at the summary judgment level, are required to take the facts and reasonable inferences in the light most favorable to the party opposing summary judgment.

*Inadequate Medical Attention*

■ Under the Fourteenth Amendment's due process clause, pretrial detainees, like Frohmader, are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment. *Martin,* 909 F.2d at 406. Thus, Frohmader's inadequate medical attention claim must be judged against the "deliberate indifference to serious medical needs" test of *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). *Martin,* 909 F.2d at 406. Frohmader contends that Wayne's response to his complaints of claustrophobia and agoraphobia constituted a violation of the *Estelle* standard.

The analysis under *Estelle* is two-pronged. The initial question is whether there is evidence of "serious medical needs." A constitutional violation only occurs when a government official's "deliberate indifference" is exhibited toward such needs. *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 208–09 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). We hold that the district court properly granted summary judgment based on the absence of evidence establishing the serious medical needs prong of the *Estelle* standard.

■ Wayne supported his summary judgment motion with excerpts of depositions of three of Frohmader's treating mental health professionals, Annemarie Infantino Murphy, Ph.D., Thomas C. Kroner, M.D., and Glenn William Trueblood, Ph.D., who denied treating Frohmader for claustrophobia or agoraphobia. Based on this evidence, Wayne argued that Frohmader was not, in fact, suffering from claustro-phobia or agoraphobia at the time of the events involved here. To avoid summary judgment, Frohmader had to come forward with specific facts showing a genuine issue for trial as to his medical needs. Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (summary judgment appropriate against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Frohmader, however, responded only with conclusory and self-serving excerpts from his deposition where he stated that he was so debilitated by claustrophobia and agoraphobia that medical intervention was constitutionally mandated. Frohmader presented no affidavits or depositions of experts, nor any other form of medical or psychological evidence, reflecting a diagnosis of claustrophobia. As for his alleged agoraphobia, Frohmader presented a letter to his attorney from a mental health professional, Michael Schmidt, Ph.D., which contained a single unelaborated reference to Frohmader's "history of agoraphobia," and added only that Frohmader "did improve" under treatment. However, Frohmader never indicated by way of allegation or deposition testimony, much less substantiated by medical evidence, how this condition, defined as a fear of wide-open public places particularly where crowds are found, *see* Merck Manual of Diagnosis and Therapy at 1504 (15th ed. 1987); Dorland's Illustrated Medical Dictionary at 41 (26th ed. 1985), was implicated by his confinement, alone, in a jail cell.

■ Submission of a question to a jury is not required merely because a party having the burden of proof has introduced some evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting *Schuylkill & Dauphin Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1871)). On the contrary, summary judgment may be granted where the

evidence presented by the party opposing summary judgment is not "significantly probative." *Id.* at 249–50, 106 S.Ct. at 2510. Here, Frohmader's assertions, unsupported by medical evidence, that his need for treatment for claustrophobia and agoraphobia was acute, did not raise a triable issue as to his medical needs in the face of Wayne's properly supported motion. Thus, summary judgment on Frohmader's inadequate medical attention claim was proper. *Cf. White v. Farrier*, 849 F.2d 322, 325–26 (8th Cir.1988) (in light of conflicting medical evidence regarding prisoner's psychological disorder, triable issue raised as to prisoner's medical needs).[5]

### III.

### CONCLUSION

Accordingly, we REVERSE the district court's dismissal of Frohmader's excessive force claim. We AFFIRM the district court's dismissal of Frohmader's deliberate indifference claim. Because we have reinstated one of Frohmader's federal claims, the pendent state law claims will be reinstated as well. The action is REMANDED to the district court for further proceedings consistent with this opinion.

---

**5.** Because we conclude that Frohmader failed to establish the serious medical needs prong of the *Estelle* standard, we need not consider whether Wayne also exhibited the requisite deliberate indifference. *See, e.g., Gaudreault*, 923 F.2d at 208–09. Moreover, Frohmader's failure to show a substantive constitutional violation under the *Estelle* standard obviates any need to address the question of qualified immunity.