**Shawn C. PRIDE, Plaintiff,**

v.

**KANSAS HIGHWAY PATROL, Trooper Jan Lamb, and Various John Does, Defendants.**

**Civ. A. No. 89–1342–T.**

United States District Court, D. Kansas.

May 1, 1992.

John Thomas Marten, Bremyer & Wise, P.A., McPherson, Kan., for plaintiff.

Carl A. Gallagher, Nancy L. Ulrich, Office of the Atty. Gen., Topeka, Kan., for defendants.

## OPINION AND ORDER

THEIS, Senior District Judge.

Plaintiff Shawn Pride brings this § 1983 action, alleging the use of excessive force by Defendant Jan Lamb. Plaintiff also brings a state battery claim against Officer Lamb. Officer Lamb presents before the court a motion for summary judgment on the ground of qualified immunity from the § 1983 suit.

## STATEMENT OF UNCONTROVERTED FACTS

On the evening of September 9, 1988, Plaintiff and his companions visited the state fair in Hutchinson, Kansas. They patronized a drinking establishment, at which Plaintiff bought a beer. After wandering about the fairgrounds, the plaintiff went to the Deli, an establishment that served beer, and purchased another beer. Plaintiff then engaged in a loud, spirited conversation about bass fishing with a man standing in line behind him. For unknown reasons, Stuart Whiteneck, the plaintiff's companion, was struck by an unidentified individual while he was standing beside the plaintiff. Plaintiff then found himself shoved out of the establishment.

Defendant Jan Lamb, who was on duty as the plainclothes trooper at the fair, received a report of an altercation at the Deli. Upon arrival, Lamb saw Troopers Mayfield and Hanlon with the plaintiff and Whiteneck. Defendant Lamb, as the officer on duty, proceeded to interview the patrons and the troopers at the establishment concerning the altercation. From the interviews, Lamb learned that either the plaintiff or his companion Whiteneck had slapped a barmaid on her arm, and that an unidentified individual in the Deli then pinned the plaintiff against the wall and struck Whiteneck. Plaintiff, however, denies slapping the barmaid or that anyone had pinned him against the wall. Officer Lamb returned to the highway patrol office to make out a report.

After the incident subsided, Plaintiff and his companions again visited another drinking establishment. Plaintiff was ordered to leave the establishment by someone working at the establishment who perhaps observed the earlier altercation. Plaintiff elected to remain on the premises. Shortly thereafter, troopers arrived. Plaintiff told the troopers that he intended to finish his beer. One of the troopers then grabbed the plaintiff and pushed him out of the establishment. Plaintiff was placed under arrest for disorderly conduct, handcuffed, and taken to the highway patrol office.

At the troopers' office, the plaintiff was seated with his hands handcuffed behind his back. Defendant Lamb proceeded to interview the plaintiff. Lamb claims that the plaintiff was verbally abusive and had

hollered that he was going to kick her "fucking dyke ass." Plaintiff denies using any abusive language. While the plaintiff was seated with his hands cuffed, Lamb perceived certain movements by the plaintiff, which she interpreted as the plaintiff's attempt to lunge forward at her. Plaintiff denies that he started forward out of his chair. Lamb then placed her left hand around the front of the plaintiff's neck to set him back down in his chair. Plaintiff screamed that he was being choked. According to the plaintiff, Lamb applied an "unpleasant, painful pressure" to his neck and throat that "reduce[d], though not entirely destroy[ed], his ability to breathe and speak." Plaintiff also claims that Officer Lamb stated that she hated men.

After the alleged choking, Plaintiff requested medical treatment from the police officers, but his request was denied. However, although Plaintiff was released that evening and was free to obtain medical treatment, he did not do so until several days later. He never needed a neck brace or any significant medical treatment. Aside from the bruises on his neck, Plaintiff claims that he suffered "psychological distress and humiliation" as a result of Officer Lamb's action. Plaintiff never sought any psychiatric counselling.

## DISCUSSION

In ruling on a § 1983 claim, the threshold inquiry is whether there was, in fact, a violation of the plaintiff's federal rights. The plaintiff in this case alleges a general claim of excessive force by a law enforcement officer, which occurred after he had been arrested and brought to the highway patrol office.

■ Excessive force claims are not governed by a single generic constitutional standard. *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1869–71, 104 L.Ed.2d 443 (1989). In *Graham*, the Supreme Court held that § 1983 claims based on excessive force *during arrest* are governed by the Fourth Amendment's "objective reasonableness" standard, and not the substantive Due Process standard. *Id.* Although the Supreme Court declined in

*Graham* to pronounce the constitutional standard governing *post-arrest* excessive force, the Tenth Circuit has held that the Fourth Amendment's protections persist beyond the point of arrest to impose restrictions on the treatment of the arrestee detained without a warrant. *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991). Because the offensive police conduct at issue here allegedly occurred subsequent to the initial arrest, the defendants' conduct must be assessed under the "objective reasonableness" standard of the Fourth Amendment.

■ The Fourth Amendment standard requires police conduct to be objectively reasonable in light of the facts and circumstances surrounding the defendants irrespective of their underlying intent or motivation. *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir.1992). Reasonableness must be viewed from the vantage point of the defendants on the scene. The court cannot, in the serenity of its chambers, apply 20/20 hindsight in determining the reasonableness of the defendants' actions. *See id.*

■ In the present case, the defendant Jan Lamb claims that she placed her left hand around the plaintiff's neck to restrain him from lunging toward her. The plaintiff, on the other hand, attests that he "did not start forward out of the chair ... toward defendant Lamb or physically threaten her in any way." (Plt's affidavit). In the face of these conflicting accounts, the court must accept the plaintiff's version of the facts. The court must also, however, view the incident from the perspective of the defendant. The defendant had learned from earlier reports—however unfounded—that the plaintiff had slapped a barmaid, was intoxicated, resisted arrest and behaved in a quarrelsome manner. Even though, according to the plaintiff's version, the plaintiff did not attempt to lunge forward at the defendant, the defendant believed that he was attempting to do so, and felt threatened. In light of her perception of the present threat, reinforced by the reports of the plaintiff's earlier conduct, she sought to restrain the plaintiff by plac-

ing her hand on the part of the plaintiff's body that was most accessible at the time. The force applied by the defendant was de minimis,[1] and caused no significant injury to the plaintiff. The plaintiff himself only complained of some "unpleasantness." He required no immediate medical treatment, and did not seek medical attention until several days later. The court concludes, therefore, that although, judging from the plaintiff's account of the incident, the defendant appears to have been mistaken in believing that her safety was threatened, her actions were not unreasonable in light of her perception and the insignificant amount of force inflicted. *See Austin,* 945 F.2d at 1160 n. 3.

■ Furthermore, to successfully state an excessive force claim, the plaintiff must establish that he suffered significant injury or that the defendant's actions were sufficiently reprehensible. *See Frohmader,* 958 F.2d 1024, 1026, 1992 WL 44884, at *5 (court found evidence of conduct "sufficiently reprehensible to constitute a clear violation of the objective reasonableness standard"); *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) ("An officer's use of excessive force does not give constitutional import to . . . minor harms."). The injury suffered by the plaintiff is not sufficiently significant to rise to the level of a constitutional violation. Likewise, the conduct complained of here is not "sufficiently reprehensible" to warrant constitutional redress. The court determines, therefore, that the plaintiff's Fourth Amendment rights were not violated.

Even if the plaintiff has stated a viable Fourth Amendment claim, the defendant is nevertheless not liable under § 1983 by virtue of qualified immunity.[2] In assessing the defense of qualified immunity, the

court must determine whether the defendant violated clearly established law of which a reasonable officer would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Although *Graham* and *Austin* apply retroactively for the purpose of determining whether a substantive constitutional violation existed, *see Austin,* 945 F.2d at 1161 n. 4, qualified immunity analysis requires an examination of the law that was clearly established at the time of the offensive conduct. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). At the time the plaintiff's constitutional right was allegedly violated, this circuit generally examined claims of post-arrest, pretrial excessive force under the substantive Due Process standard. *Frohmader,* 958 F.2d 1024, 1027; *Austin,* 945 F.2d at 1162. The plaintiff, therefore, bears the burden of showing that Officer Lamb's action constituted an excessive use of force under the substantive Due Process standard, and that a reasonable officer in her position would have known that her action was unlawful.

■ Under the Due Process standard, the following factors are relevant to whether the use of force is excessive: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the police officer. *Hannula v. City of Lakewood,* 907 F.2d 129, 131-32 (10th Cir. 1990). Section 1983 redresses Due Process violations that involve the use of force "amounting to an abuse of official power that shocks the conscience" or stemming from malice. *Hewitt v. City of Truth or Consequences,* 758 F.2d 1375, 1379 (10th Cir.), *cert. denied,* 474 U.S. 844, 106 S.Ct.

---

1. The defendant offers evidence showing that she is no Amazon: she had insufficient strength in her hand to properly operate a crimper box in DUI cases.

2. Qualified immunity defense is of limited value in excessive force claims asserted under the Fourth Amendment. *Dixon v. Richer,* 922 F.2d 1456, 1463 (10th Cir.1991); *Quezada v. County of Bernalillo,* 944 F.2d 710, 718 (10th Cir.1991). This is because the substantive inquiry under

the Fourth Amendment—whether the police officer reasonably could have believed that the force was necessary—is the same inquiry that determines the availability of qualified immunity. *Dixon,* 922 F.2d at 1463. In this case, however, since the qualified immunity question is analyzed under the substantive Due Process standard, see below, *Dixon* and *Quezada* are inapplicable.

131, 88 L.Ed.2d 108 (1985). As evident, the Due Process standard is more onerous than the Fourth Amendment's "objective reasonableness" standard. *Frohmader*, 958 F.2d 1024, 1027.

In *Hannula*, the Tenth Circuit granted qualified immunity to a police officer who handcuffed an arrestee too tightly, reasoning that the amount of force used was not substantial, and that the injury sustained was minimal. 907 F.2d at 132. The court noted that, despite the arrestee's assertion that she suffered nerve damage and possibly bone damage, she offered no medical evidence of any type of injury. *Id.*

■ Here, the plaintiff's injury was minimal. The plaintiff alleges only experiencing some discomfort or unpleasantness but fails to show that he suffered any real injury. Plaintiff did not require any immediate medical attention. Perhaps more probatively, the mug shot of the plaintiff, taken shortly after the alleged excessive force, shows the plaintiff smiling and appearing in good spirits. (Def's exh. 3.) In addition, the force applied by Officer Lamb was not substantial, particularly in light of Officer Lamb's perception that her safety was threatened. Although the defendant's belief was unfounded, her use of force appears no more than necessary to restrain the plaintiff. The absence of any significant injury belies the plaintiff's claim that he had been "choked" by Lamb. Finally, while the defendant's alleged statement that she hated men may be probative of malice, it certainly does not conclusively establish any malicious intent on the defendant's part—particularly in view of the insignificant force applied and the minimal injury sustained. Considering all three factors together, the court concludes that the plaintiff has failed to show that Lamb's action constituted excessive force under the Due Process standard.[3] The defendant is thus entitled to qualified immunity.

---

**3.** Because the threshold requirement of establishing a constitutional violation is not met, the qualified immunity analysis necessarily terminates at this point. It is thus not necessary to engage in the central *Harlow–Anderson* analysis

### STATE CLAIM

Having dismissed the plaintiff's federal claim, the court also dismisses the state claim of battery because there exists no independent diversity jurisdiction to support the state claim in federal court.

■ Diversity of citizenship is determined based on the litigants' citizenship at the time the action is initiated. *E.g., Johnston v. Cordell Nat'l Bank*, 421 F.2d 1310, 1311 (10th Cir.1970). The law presumes that an individual retains his former domicile even when he changes his residence unless there is clear and convincing evidence of his physical presence in the newly acquired domicile and of his intent to establish that new domicile. *Morris v. Gilmer*, 129 U.S. 315, 328–29, 9 S.Ct. 289, 293, 32 L.Ed. 690 (1889); *Coggins v. Carpenter*, 468 F.Supp. 270, 277–78 (E.D.Pa.1979).

■ At the time this action was filed, Plaintiff was a Kansas resident, as were the defendants. Although the plaintiff resided in New York then, he still considered himself a Kansas citizen until March or April of 1990, after the filing of this action. (Plt's Depo. p. 15–16.) While the plaintiff appears to have met the "physical presence" requirement in changing his Kansas domicile, his testimony reveals that he lacked the requisite intent of establishing New York citizenship when this suit was filed. Any changes in domicile subsequent to the filing of the lawsuit are irrelevant to determining diversity. *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957). Moreover, the plaintiff failed to allege in his complaint that he was a New York citizen or domiciliary; he alleges simply that he was a "resident of New York." To invoke diversity jurisdiction, the party must allege citizenship or domicile, and not merely residence. *Anderson v. Watt*, 138 U.S. 694, 702, 11 S.Ct. 449, 451, 34 L.Ed. 1078 (1891); *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir.1972). The court thus lacks diver-

of whether a reasonable officer in the defendant's position would have believed that her action was unlawful in light of the clearly established law and the information possessed by the defendant at the time.

sity jurisdiction to adjudicate the state battery claim.

 The court also deems it inappropriate in this instance to exercise pendent jurisdiction over the state claim. The decision to exercise jurisdiction over pendent claims is a matter of judicial discretion. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In *Gibbs*, the Supreme Court advised that federal courts should decline to exercise jurisdiction over pendent state claims "if the federal claims are dismissed before trial." *Id.*

Having granted the defendant's summary judgment motion on the federal claim, the court finds that considerations of judicial economy, convenience and fairness necessitate dismissing the plaintiff's state claim for lack of a substantial federal question. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). Requiring the plaintiff in this case to pursue his tort claim in state court will not cause inconvenience or unfairness to the litigants and will better serve the interest of comity between the federal and state courts. The plaintiff's battery claim is, therefore, dismissed without prejudice.

IT IS BY THIS COURT THEREFORE ORDERED that Defendant's Motion for Summary Judgment on the § 1983 claim is hereby granted. The state battery claim is hereby dismissed without prejudice.