Ronnie J. SMITH, Plaintiff,

v.

Darras DELAMAID, et al., Defendants.

Civ. A. No. 90–1476–T.

United States District Court,
D. Kansas.

Jan. 11, 1994.

---

Jack Focht, Focht, Hughey & Calvert, Wichita, KS, for plaintiff.

H.E. Jones, Hershberger, Patterson, Jones & Roth, Kelly J. Rundell, Wichita, KS, for defendants.

### MEMORANDUM AND ORDER

THEIS, District Judge.

The plaintiff, Ronnie Smith ("Smith"), brought this action pursuant to 42 U.S.C. § 1983, alleging that the individual defendant officers violated plaintiff's constitutional rights by using excessive force against him. Plaintiff further alleges that defendant City of Wichita is liable under § 1983 because it has an unofficial policy of using excessive force on persons arrested for driving under the influence ("DUI") and it improperly handles citizens' complaints of excessive force, causing plaintiff's injuries. The matter is before the court on the defendants' motion for summary judgment.

### Factual Summary

On December 16, 1985, plaintiff was arrested for driving under the influence of alcohol. The arrest was made by defendant Darras Delamaid, an officer of the Wichita Police Department. Other than the alleged use of excessive force, the arrest was in all respects lawfully made. Plaintiff claims that his finger was cut on the chrome of Officer Delamaid's patrol car while plaintiff was being handcuffed. Defendant Delamaid con-

tends he observed the cut on plaintiff's finger at the time of the arrest, and plaintiff told Delamaid that he had cut his finger on a newspaper stand.

Upon making the arrest, Delamaid placed plaintiff in the passenger seat in the front of the patrol car. According to Delamaid, plaintiff was loud and verbally abusive during the drive to the police station and leaned over to within twelve inches of Delamaid's face. Delamaid claims he ordered plaintiff to move back toward the passenger side, and when plaintiff did not do so, Delamaid pushed plaintiff back, using his right forearm against plaintiff's left shoulder and upper arm. Plaintiff denies being loud and abusive. He further claims that he was crowded against a briefcase in the middle of the front seat, and his knees were against the officer's shotgun (in its holder) and the dashboard. Plaintiff claims that he leaned toward the center of the car (two or three feet from Delamaid) to be more comfortable in the cramped space. Plaintiff claims to have complained about the handcuffs being too tight. Plaintiff agrees that Officer Delamaid ordered him to move away, but contends that before he had the chance to do so, Officer Delamaid hit plaintiff on the ear with his elbow and said, "The next time I tell you to move, you'd better move." The remainder of the trip to the police station was without incident.

Defendants claim plaintiff was loud and verbally abusive while he was at the police station. Again, plaintiff denies this. Defendants Delamaid, Officer Winston Kenton, and Officer Michael Gonzales testified in their depositions that they smelled alcohol on plaintiff's breath during their contact with him. Plaintiff claims he reported to the officer at the booking desk that he had been struck by Delamaid and wanted to make a formal complaint. Plaintiff claims the officers present laughed and joked about Delamaid hitting plaintiff. Plaintiff was informed that any formal complaint would have to be made through the Internal Affairs department the following day. Plaintiff claims he was told to "shut up and quit whining."

While in the booking room, plaintiff was seated beside a breathalyzer machine, and was to be subjected to a breath test. However, while sitting beside the machine, plaintiff grabbed its mouthpiece, broke it from the

machine, and threw it across the room. Plaintiff claims he had lost emotional control because of the treatment he had just received.

Plaintiff is unable to identify with certainty which officers were present in the booking room at the time, but it is uncontroverted which officers were present and on duty in the booking room.

Plaintiff claims that after he broke the machine, the officers grabbed him and threw him against the wall. Plaintiff contends he was not resisting. The officers allegedly kicked plaintiff's feet out from under him, and plaintiff fell flat on his stomach. He was then handcuffed. Plaintiff claims the officers picked him up, told him "he had really messed up now," and shoved plaintiff onto the floor of a holding cell. Defendants contend that plaintiff was, in fact, struggling with the officers as they tried to restrain him, and that, as a result, the officers and plaintiff fell to the floor. Defendants deny kicking and shoving plaintiff. Defendants admit that plaintiff was placed in a holding cell, but deny throwing plaintiff into the cell.

The officers decided to take plaintiff to a police van where a second breathalyzer was located in order to test plaintiff's blood alcohol level. Defendants Officer David O'Donnell, Gonzales, and possibly Officer Maitland Smith ("Officer Smith"), escorted plaintiff to the van. Plaintiff claims that while walking to the police van, one of the officers jabbed him once on the lower back, near his kidneys, with a night stick. All defendants deny striking plaintiff en route to the van and deny observing another officer do so. When plaintiff and the officers arrived at the van, defendant Kenton was already there with another prisoner, Christian Gamba.

The officers placed plaintiff inside the van near the breathalyzer machine. At that time, Gamba became "unruly and disruptive." He grabbed the keys to the van and yelled, "It's going to blow!" The officers believed Gamba was trying to move the van. Defendants Kenton, O'Donnell and Gonzales subdued Gamba. While the officers were occupied with Gamba, plaintiff disabled the second breathalyzer machine by breaking its thermometer. Plaintiff admits this conduct, but claims it was caused by his emotional distress over the treatment he had received by the various police officers.

Defendants O'Donnell and Kenton removed plaintiff from the van. Defendants claim plaintiff was being disruptive and verbally abusive. The officers placed plaintiff on the pavement, face down. They handcuffed plaintiff and put shackles on his ankles. The shackles were brought and placed on plaintiff's ankles by defendant Delamaid, who heard the commotion or a call for shackles over his radio. Defendant Kenton claims that because plaintiff was struggling, Kenton placed his knee diagonally across plaintiff's back until plaintiff was handcuffed. Plaintiff denies that he resisted the officers' attempts to restrain him. Plaintiff claims he was ordered at gunpoint to get out of the van and lie on the concrete floor. He further claims that defendant Kenton stepped in the middle of his back and pushed plaintiff's handcuffed wrists up to the middle of plaintiff's shoulder blade, which damaged plaintiff's shoulder. According to plaintiff, he was then ordered to place his chin on the curb, and when he did so, one of the officers stomped on his neck and head and rolled his heel into plaintiff's throat. The other officers allegedly stood and watched the incident, but did not intervene. Plaintiff claims he was then told to stand, and when he tried, he was kicked between the legs and then thrown against the wall. The officers deny committing any such acts or observing any such conduct by each other.

Plaintiff was again taken to a holding cell. On the way, plaintiff complained that he was hurt and demanded to be taken to the hospital. Plaintiff was taken to Saint Francis Medical Center, where it was determined that plaintiff's injuries would not pose a threat to his health if he returned to jail. Plaintiff claims defendants Delamaid and Kenton threatened plaintiff during the drive to the hospital, and plaintiff promised not to tell the medical care providers that he had been beaten by the officers. According to plaintiff, he informed the doctor that he had been beaten and wanted to be admitted for treatment of his ear, back, neck, shoulder, and testicles, but the doctor told plaintiff he could not be admitted unless "it was a life and death situation" because he was under arrest. Plaintiff was released from custody at 9:00 a.m. on December 16, 1985.

Plaintiff returned to the emergency room at Saint Joseph Medical Center later that day and was examined at 4:55 p.m. by Dr. Osio. Plaintiff complained about hearing problems and neck stiffness and pain. The examining doctor found the following: fluid behind plaintiff's left eardrum; tenderness in the left jaw; tenderness in both rib cages; redness and swelling in both wrists, which exhibited full strength and range of motion; a large hematoma from the left lumbar area down to the buttocks with tenderness; tenderness in the right testicle; and bruises on both calves. All x-rays were negative. Dr. Osio stated that his findings were consistent with someone who had been beaten, which is what plaintiff had reported to him.

On December 19, 1985, plaintiff was examined by a Dr. Cummings. Plaintiff complained of pain, dizziness, hearing loss, and bleeding from his left ear. Dr. Cummings found a bruised left ear and some jaw joint dysfunction. Plaintiff complained of hearing loss, but the test results led Dr. Cummings to suspect that plaintiff was malingering. Dr. Cummings gave plaintiff splints for his jaw joints and expected plaintiff to recover fully.

Plaintiff testified at his January 1989 deposition that he still suffered tenderness, pain and dysfunction in his testicles and rectal bleeding caused by the blow to the kidneys.

Plaintiff was charged in state court with driving under the influence of alcohol and two counts of felonious destruction of property. Plaintiff was acquitted of the DUI charge, but convicted of the other charges.

Plaintiff concedes that he never filed a complaint with the Internal Affairs office of the Wichita Police Department. Plaintiff further concedes that he was informed of the manner for making a formal complaint. The City of Wichita has a written policy for investigation of citizen complaints against Wichita police officers. The defendant officers have received training regarding citizen and officer complaints about the conduct of Wichita police officers. Plaintiff admits that he has no evidence, outside the treatment he received, that the City of Wichita has a policy or practice of using excessive force in DUI arrests. The Wichita Police Department has a written policy on the use of force which states, in sum, that an officer is to use only the minimum amount of force necessary in any given situation. The defendant officers in this case received training in the use of force and on the department policy regarding the use of force.

At the time of the alleged incidents of excessive force, the individual defendants, Delamaid, Kenton, Arnold, Officer Smith, Gonzales, and O'Donnell, were all employed as police officers by the City of Wichita, and were all on duty and acting under the color of law at the time of the alleged excessive force. The City of Wichita is, and was at all times relevant to this action, a municipal corporation.

## I. Standard of Review

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on

its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

## II. Excessive Force

Defendants first argue that plaintiff's allegations and evidence of excessive force are insufficient to amount to a constitutional claim under § 1983. Defendants argue that the amount of force used was necessary to subdue plaintiff, that there is no evidence of malice on the part of the officers, and that plaintiff did not receive such injuries as to "shock the conscience." Defendants further argue that because plaintiff cannot identify which of the officers present committed some of the alleged acts, none of the officers may be liable for the use of excessive force.

■ Excessive force claims are not governed by a single generic constitutional standard. *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). In *Graham,* the Supreme Court held that § 1983 claims based on excessive force during arrest are governed by the Fourth Amendment's "objective reasonableness" standard, and not the substantive Due Process standard. *Id.* Although the Supreme Court declined in *Graham* to pronounce the constitutional standard governing *post-arrest* excessive force, the Tenth Circuit has held that the Fourth Amendment's protections persist beyond the point of arrest to impose restrictions on the treatment of the arrestee detained without a warrant. *Austin v. Hamilton,* 945 F.2d 1155, 1160 (10th Cir.1991). Because the offensive police conduct at issue here allegedly occurred both during and subsequent to the initial arrest, the defendants' conduct must be assessed under the "objective reasonableness" standard of the Fourth Amendment.

■ The Fourth Amendment standard requires police conduct to be objectively reasonable in light of the facts and circumstances surrounding the defendants' actions irrespective of their underlying intent or motivation. *Frohmader v. Wayne,* 958 F.2d 1024, 1026 (10th Cir.1992). Thus, defendants argument that they did not violate the plaintiff's constitutional rights because they did not act with any particular malice toward him is untenable. Unreasonable force, even if applied without malice, violates the Fourth Amendment. Reasonableness must be viewed from the vantage point of the defendants on the scene. *Id.* The court cannot, in the serenity of its chambers, apply 20/20 hindsight in determining the reasonableness of the defendants' actions. *See id.* In this case, there is a genuine issue of material fact as to whether the defendants' actions were reasonable. According to plaintiff's version of the facts, although plaintiff did destroy some property, he did not resist any attempts by the officers to restrain him. Plaintiff asserts that despite this lack of resistance, he was hit on his left ear, he was hit in the kidneys with a nightstick, his feet were kicked out from under him, causing him to fall, he was kicked between the legs, his neck was stomped, his arm was bent far behind his back, and he was thrown to the floor and later against a wall. Moreover, according to plaintiff, most of the acts of force occurred while plaintiff was restrained by handcuffs and/or shackles. The defendants' version of the facts is much different. According to the defendants, plaintiff was verbally abusive and physically resisted every attempt to restrain him. More importantly, defendants deny using the level of force plaintiff alleges. Thus, there is a genuine issue of material fact as to whether the defendant officers acted reasonably in this case.

■ Furthermore, to successfully state an excessive force claim, the plaintiff must establish that he suffered significant injury or that the defendant's actions were sufficiently reprehensible. *See Frohmader,* 958 F.2d at

1026 (court found evidence of conduct "sufficiently reprehensible to constitute a clear violation of the objective reasonableness standard"). As stated above, there is a genuine issue of material fact as to the nature of the defendants' conduct. Moreover, there is a dispute regarding the injuries plaintiff sustained. There is medical evidence taken the day of the alleged excessive force to support a finding that plaintiff was "beaten up." There was fluid behind plaintiff's eardrum, allegedly caused by the blow from Officer Delamaid's elbow. Three years after the incident plaintiff testified that he still experienced rectal bleeding due to the alleged punch to the kidneys. Plaintiff testified to continuing pain in his right testicle due to the kick he allegedly received. A § 1983 plaintiff need not prove that he is permanently disabled or disfigured in order to establish a constitutional violation. In short, there is a genuine issue of material fact as to whether the officers' conduct amounted to a violation of the plaintiff's constitutional rights.

▆▆▆ Finally, the officers contend that none of them is liable for any acts of abuse occurring at the police station because plaintiff could not positively identify who committed which alleged act or even who was present in the booking room at the relevant time. The court disagrees with this argument. Although plaintiff could not identify with certainty which officers were working in the booking room on December 16, 1985, this matter is not in dispute. The defendants have admitted that they were on duty at the relevant time. There is little dispute concerning which officers were involved in each incident which plaintiff alleges involved excessive force. The only question, therefore, is which, if any, officers engaged in the conduct alleged. Moreover, this is only a question because plaintiff alleges that he was struck from behind at times when at least three officers were in a position to do so. An officer is liable under § 1983 for the use of excessive force by another officer if he or she was in a position to prevent the excessive

force, but failed to do so. *Berry v. City of Phillipsburg*, 796 F.Supp. 1400, 1405 (D.Kan. 1992). Therefore, the individual defendants cannot escape liability merely because plaintiff cannot identify which officers allegedly abused him at which time.

### III. Qualified Immunity

▆▆▆ Next, the individual officers argue that even if the plaintiff has stated a viable Fourth Amendment claim, they are nevertheless not liable under § 1983 by virtue of qualified immunity.[1] In assessing the defense of qualified immunity, the court must determine whether the defendant violated clearly established law of which a reasonable officer would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Although *Graham* and *Austin* apply retroactively for the purpose of determining whether a substantive constitutional violation existed, *see Austin*, 945 F.2d at 1161 n. 4, the qualified immunity analysis requires an examination of the law that was clearly established at the time of the offensive conduct. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). At the time the plaintiff's constitutional right was allegedly violated, this circuit generally examined claims of post-arrest, pretrial excessive force under the substantive Due Process standard. *Frohmader*, 958 F.2d at 1027; *Austin*, 945 F.2d at 1162. The Tenth Circuit has held that pre-*Graham* excessive force cases in which the plaintiff has specifically invoked the Fourth Amendment are to be examined under the Fourth Amendment reasonableness standard in determining both the existence of a constitutional violation and the availability of qualified immunity. *Dixon v. Richer*, 922 F.2d 1456, 1460–61 (10th Cir. 1991). In this case, however, plaintiff based his claim on Fourteenth Amendment substantive due process rather than the Fourth Amendment. The plaintiff, therefore, bears

---

1. Qualified immunity defense is of limited value in excessive force claims asserted under the Fourth Amendment. *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir.1991); *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir.1991). This is because the substantive inquiry under the Fourth Amendment—whether the police officer

reasonably could have believed that the force was necessary—is the same inquiry that determines the availability of qualified immunity. *Dixon*, 922 F.2d at 1463. In this case, however, since the qualified immunity question is analyzed under the substantive Due Process standard, see below, *Dixon* and *Quezada* are inapplicable.

the burden of showing that the officers' conduct constituted an excessive use of force under the substantive Due Process standard, and that reasonable officers under the circumstances would have known that their actions were unlawful.

■■■■ Under the Due Process standard, the following factors are relevant to whether the use of force is excessive: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the police officer. *Hannula v. City of Lakewood,* 907 F.2d 129, 131–32 (10th Cir.1990). Section 1983 redresses Due Process violations that involve the use of force "amounting to an abuse of official power that shocks the conscience" or stemming from malice. *Hewitt v. City of Truth or Consequences,* 758 F.2d 1375, 1379 (10th Cir.), *cert. denied,* 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). The Due Process standard is more onerous than the Fourth Amendment's "objective reasonableness" standard. *Frohmader,* 958 F.2d at 1027.

■■■■ First the court must compare the amount of force used to the needs of the situation. As for the level of force, plaintiff has alleged that he was hit hard in the ear, punched in the kidneys, kicked in the groin, and thrown against the wall and the floor. He further alleges that while he was on the ground, one of the officers stepped on his throat. Plaintiff claims he never resisted the officers' attempts to restrain him. In fact, most of the acts of abuse are alleged to have occurred after plaintiff was restrained by handcuffs and/or ankle shackles. Plaintiff admits that he caused some property damage, but claims he never posed a danger to the officers or anyone else. The officers, on the other hand, deny that they used the level of force plaintiff alleges. Moreover, the officers assert that plaintiff resisted every effort to restrain him.

The second factor is the amount of injury caused by the force used. In *Hannula,* the Tenth Circuit granted qualified immunity to a police officer who handcuffed an arrestee too tightly, reasoning that the amount of force used was not substantial, and that the injury sustained was minimal. 907 F.2d at 132. The court noted that despite the arrestee's assertion that she suffered nerve damage and possibly bone damage, she offered no medical evidence of any type of injury. *Id.* In this case, as discussed above, the plaintiff has evidence of more substantial injuries.

Third, the court must look at the motives of the police officers. In this case, there is no evidence of any particular animus toward the plaintiff. It can be argued that some of the acts, such as bending plaintiff's arm behind his back, were motivated simply by a desire to restrain plaintiff. However, most of the alleged acts of force cannot be so explained. Much of the alleged abuse came immediately after plaintiff damaged the breathalyzer machines, creating the inference of a motive of retribution. Other alleged acts, such as the kidney punch and elbow to the ear, have no explanation at all except as an overzealous display of authority.

■■■■ A reasonable police officer would know that to kick, punch, and throw a restrained, cooperative arrestee constitutes excessive force under the Due Process standard. Under the defendants' version of the facts, the level of force used was substantially less and the need for using force was substantially higher. Moreover, there is a dispute concerning the level of injury plaintiff suffered. Thus, there are genuine factual disputes that must be resolved before the court can decide the issue of qualified immunity. *See Frohmader,* 958 F.2d at 1027. The individual defendants are not entitled to summary judgment.

## IV. Municipal Liability

■■■■ Plaintiff contends that the City of Wichita has two policies which caused the alleged violation of his constitutional rights. First, plaintiff argues that the official City policy for handling excessive force complaints deprived him of any redress while he was in custody and led to further abuse by the defendant officers. Second, plaintiff argues that the City has an informal policy of allowing its police officers to use excessive force against DUI arrestees.

Plaintiff's first theory points to the City's official policy for handling citizen complaints of excessive force. Plaintiff alleges that the City's policy of taking excessive force complaints at the Internal Affairs office during prescribed hours denied him any opportunity to officially complain while he was in custody. Plaintiff argues that if he had been allowed to complain of the first alleged use of force, the officers in the booking room would not have abused him further. Plaintiff's argument addresses the causation element of municipal liability. However, causation alone is insufficient for municipal liability. After all, for nearly every constitutional violation by a municipal employee, the injured party can point to some potential municipal policy that would have prevented the violation. *City of Canton v. Harris,* 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). It is necessary that the plaintiff also prove fault on the part of the municipality—either that the policy is facially unconstitutional or that the policy represents the municipality's deliberate indifference to constitutional rights. *Jones v. City of Chicago,* 787 F.2d 200, 205 (7th Cir.1986). Certainly, the policy of taking excessive force complaints at the Internal Affairs office is not facially unconstitutional. Moreover, there is no evidence that the policy for taking excessive force complaints is the result of the City's deliberate indifference to the constitutional rights of detainees. Plaintiff has presented no evidence that the type of continuing abuse plaintiff alleges has been a problem in the past, or that the City's decision to restrict the time and place for taking excessive force complaints was made for any improper reason.

Furthermore, plaintiff argues that once a complaint of excessive force is made, the complaint is not properly examined because the Internal Affairs Office of the police department itself evaluates such complaints. Plaintiff presents no evidence that Internal Affairs is not properly doing its job. Plaintiff alleges that the process permits officers to go unpunished for abusive acts against citizens. However, plaintiff has shown the court no evidence either of abusive conduct by other officers or of the level of discipline (if any) such officers may have received. The mere fact that complaints of excessive force are handled by Internal Affairs is insufficient to show an improper policy with leads to violations of citizens' rights.

Plaintiff's second theory for municipal liability must fail because plaintiff does not have the proper evidence to support it. Plaintiff argues that there is an unofficial policy, or pattern, of using excessive force against DUI arrestees. The only evidence plaintiff has of any policy or pattern is his own account of the force used against him and his allegations of inadequate discipline.[2] Clearly, a single incident of abuse does not establish either a pattern or causation. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 821–24, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791 (1985). An inadequate disciplinary procedure may be evidence of an informal municipal policy of permitting excessive force. However, as discussed above, there is no evidence that the City of Wichita's policy for police discipline is inadequate. *See Santiago v. Fenton,* 891 F.2d 373, 382 (1st Cir.1989).

Because the plaintiff has failed to identify any evidence which would support his claim for municipal liability under § 1983, there is no genuine issue of fact for a jury to decide. Therefore, it is appropriate for the court to grant summary judgment to defendant City of Wichita, Kansas.

**IT IS BY THIS COURT THEREFORE ORDERED** that defendants' motion for summary judgment (Doc. 36) is hereby denied as to the individual defendants and granted as to defendant City of Wichita, Kansas.

---

2. Plaintiff notes that the officers involved in this case have not been investigated or disciplined. However, plaintiff never filed an Internal Affairs complaint.