William S. DAVIS, Plaintiff,

v.

Michael HILL, Individually and as Sheriff of Sedgwick County, Kansas; Michael Pulice, Individually and as Undersheriff of Sedgwick County, Kansas; David R. Peterson, Deputy Sheriff and Detention Sergeant of Sedgwick County, Kansas; Daryl M. White, Deputy Sheriff and Detention Sergeant of Sedgwick County, Kansas; Christopher R. Carlton, Curtis J. Tracey, and Michael Russell Detention Deputies for Sedgwick County Sheriff; the Board of County Commissioners of Sedgwick County, Kansas; Aaron S. Kern and D.W. Jackson, Police Officers for the City of Wichita, Kansas; and the City of Wichita, Kansas, Defendants.

No. 98–4229–DES.

United States District Court, D. Kansas.

Nov. 15, 2001.

Cortland E. Berry, Cortland E. Berry Legal Clinic, Wichita, KS, for Plaintiff.

Alan A. Rupe, S. Douglas MacKay, Husch & Eppenberger, LLC, Wichita, KS, for Defendants.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' Motion for Summary Judgment (Doc. 50). Plaintiff has filed a Response (Doc. 62), and defendants have filed a Reply (Doc. 67). In this 42 U.S.C. § 1983 action, plaintiff seeks damages for the deprivations he allegedly endured as a result of excessive police force. In its Order (Doc. 66) dated August 28, 2000, the court granted defendants Aaron Kern, D.W. Jackson, and the City of Wichita, Kansas's Motion for Summary Judgment (Doc. 47). Therefore, the remaining defendants all join in presenting the instant request for summary judgment. For the following reasons, defendants' motion shall be granted in part and denied in part.

## I. BACKGROUND

The following facts concerning plaintiff's claims are either uncontroverted or, if controverted, are construed in a light most favorable to plaintiff.

### A. Plaintiff's Arrest

In the early morning hours of October 28, 1998, plaintiff was observed by Officer Kern of the Wichita Police Department inside a local convenience store. According to Officer Kern, plaintiff exuded a strong odor of alcohol and his speech was slurred. Plaintiff, on the other hand, has

no recollection of ever being inside the convenience store. (Pl. Dep. at 88, 90). Plaintiff exited the store and entered a white van parked outside. Officer Kern approached plaintiff and advised him he should not be driving if he had been drinking. Apparently choosing not to head this advice, plaintiff drove the van out of the lot by making an improper right hand turn and striking the curb on the far side of the roadway.

Officers Kern and Wiley pursued plaintiff until plaintiff stopped the van in a residential driveway. Plaintiff was removed from the vehicle and placed in handcuffs. Plaintiff alleges he was forcibly removed and thrown to the ground before being handcuffed. At some point, plaintiff's body and head struck the side of his van as the officers placed him in a tactical control position. The officers allege this was done in response to plaintiff's aggressive behavior. Eventually, a blood alcohol test ("BAT") van was called to the scene. Plaintiff refused to participate in the test, and the officers decided to place plaintiff in the rear of the van for transport to the Sedgwick County Adult Detention Facility ("jail"). Once again, plaintiff has no independent recollection of the existence of the BAT van, his presence inside it, or his eventual transport to the jail.[1] (Pl. Dep. at 98).

## B. Plaintiff's Detention

Plaintiff arrived at the jail at approximately 5:15 a.m. The BAT van was met outside the jail by Deputies Carlton and Tracey. Plaintiff has no recollection of his arrival at the jail. (Pl.Resp.¶ 20). Deputy Carlton testified plaintiff was wet and had some cuts and bruises about his head upon arrival. While plaintiff was being escorted

from the BAT van to the jail's entrance, he physically resisted the deputies and entered a "violent frenzy." (Carlton Aff. ¶ 14). As a result, plaintiff was forced to the ground on multiple occasions, and the deputies administered "pressure techniques" to physically control him. These events are uncontroverted due to plaintiff's persistent failure of recollection.

Once inside the jail's processing facility, plaintiff continued to demonstrate aggressive behavior coupled with a high state of intoxication. A search of plaintiff was performed, wherein deputies were forced to apply physical pressure to effectuate the search. After the search, plaintiff was placed in a restraint chair. The restraint chair completely immobilizes an individual by the use of several straps attached to the chair. Plaintiff has no recollection of being placed in the chair. (Pl.Resp.¶ 41).

In conformance with established jail policy, plaintiff was examined by medical personnel shortly after being placed in the restraint chair. Plaintiff has no recollection of this examination. From approximately 5:30 a.m. to 6:30 a.m., plaintiff remained in the chair. Plaintiff continued to be hostile during this time by yelling obscenities and threatening the deputies and staff. Plaintiff does recall yelling for an hour. (Pl. Dep. at 305). At 6:30 a.m., plaintiff was released from the restraint chair to have breakfast.

At approximately 6:50 a.m., while plaintiff remained handcuffed in his cell, the jail staff underwent a shift change. During this time, plaintiff was still yelling and kicking his cell's door. What transpired next is highly controverted and is the foundation of plaintiff's claim. According to plaintiff:

> ing to light a cigarette, I believe, when I was pulled out of my van, thrown to the ground and handcuffed." (Pl. Dep. at 95).

---

**1.** In fact, plaintiff's recollection of his arrest is limited to the following: "All I recall is I pulled into the driveway, turned the headlights off and the engine off and was attempt-

from that point a black officer with sergeant stripes came to the door and opened the door, entered the cell, which I thought he was there to remove the handcuffs, and hit me behind the ear on the left side on the back of my head knocking me onto the steel bed, knocking my head off the steel wall, and then proceeding to take his thumb and grind it in behind my ear on the left side.

At which point another officer entered the cell and they proceeded attacking and torturing me on every joint in my body, elbows, shoulders, knees. And by the end of it all, they had beaten me unconscious ....

(Pl. Dep. at 101–02). To date, plaintiff has been unable to positively identify any defendants as his attackers.

On the other hand, defendants deny any beating took place. Instead, defendants direct the court to an incident report filed by Sergeant Scott Farmer. In the report, Sgt. Farmer details how he entered plaintiff's cell in an attempt to quell his yelling and kicking of the cell door. Upon entering the cell, Sgt. Farmer thought plaintiff was attempting to attack him, so Sgt. Farmer struck plaintiff with an open hand; knocking him onto the cell's bed. Once face down on the bed, plaintiff's handcuffs were switched out with another pair, and plaintiff was warned to stop kicking the cell door. Defendants assert this is the totality of physical contact that occurred in plaintiff's cell.

Plaintiff was questioned at length in his deposition regarding the similarity of these two descriptions. Although plaintiff could only identify the first deputy by rank and race, after reviewing Sgt. Farmer's report, plaintiff agreed "it sounds like the incident I've described to you, only different." (Pl. Dep. at 289). Additionally, plaintiff con-

cluded: "I believe this is a report written as a cover-up for the torture that was inflicted upon me in Cell 28." (*Id.* at 286).

According to defendants, plaintiff continued to yell and kick the door, so at approximately 7:11 a.m., Sgt. Farmer ordered plaintiff to be placed in the restraint chair. Plaintiff has no recollection of being placed in the chair. Instead, he asserts he regained consciousness after the beating to find that he had defecated himself and was bound in the restraint chair. In any event, it is uncontroverted plaintiff remained in the chair until approximately 9:15 a.m. While in the chair, plaintiff alleges he was struck in the back of the head by an unidentified individual and commanded to shut up. After being released from the chair, plaintiff was again examined by medical personnel at 9:38 a.m. The incident inside the cell and the blow to his head comprise the total of plaintiff's allegations of excessive force. (Pl. Dep. at 139).

## II. PLAINTIFF'S CLAIMS

The court interprets plaintiff's filings and the Pretrial Order (Doc. 64) as raising four claims: (1) a § 1983 claim premised on excessive police force during plaintiff's arrest against defendants Kern, Jackson, and the City of Wichita; (2) a § 1983 claim premised on excessive police force during plaintiff's detention at the jail against defendants Hill, Pulice, Peterson, White, Carlton, Tracey, Russell, and the Board of County Commissioners ("County defendants"); (3) a § 1983 claim premised on defendants' failure to supervise and/or train against defendants Hill, Pulice, and the Board of County Commissioners; (4) a § 1983 claim premised on defendants' negligent or purposeful withholding of medical care against the County defendants.[2]

---

**2.** The Amended Complaint (Doc. 24) also includes a conspiracy claim. However, the pretrial order makes clear plaintiff has aban-

doned this claim: "plaintiff, however, is not asserting a separate conspiracy-to-coverup claim in this case." (Pretrial Order at 4).

Plaintiff now concedes summary judgment should be granted to defendants Hill, Pulice, and the Board of County Commissioners on his failure to train and/or supervise claim. (Pl. Resp. at 14). The court will, therefore, grant summary judgment to defendants Hill, Pulice, and the Board of County Commissioners on plaintiff's failure to train claim. In addition, as mentioned above, the court previously granted summary judgment on all claims against defendants Kern, Jackson, and the City of Wichita. Thus, only plaintiff's claims of excessive police force and inadequate medical care against the County defendants are viable for consideration within the instant motion for summary judgment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'-that is, pointing out to the district court-that there is an absence

of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) ("The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues."). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## IV. DISCUSSION

### A. Claims Generally Under 42 U.S.C. § 1983

Claims brought pursuant to § 1983 seek relief for deprivations of federally secured rights. To prevail on his § 1983 claims, plaintiff "must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under the color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). *See generally Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1237 (10th Cir.1999). While § 1983 is a vehicle by which plaintiff may seek relief, the statute neither grants or creates any independent substantive rights. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (noting § 1983 is not itself a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred").

### B. Excessive Force Claim

#### 1. Applicable Constitutional Standard

■ The court must first consider what constitutional right plaintiff's claim of excessive police force implicates—establishing the respective standard governing the court's analysis. The court begins by stating the general rule: "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (emphasis in original). In typical excessive force claims, a putative plaintiff, in line with the above holding of the Supreme Court, will present their arguments under the Fourth Amendment framework. Unfortunately, in the case at bar, plaintiff has failed to explicitly submit his claim under the Fourth Amendment.[3]

Defendants assert this omission compels the court to consider plaintiff's claim under the substantive due process analysis embodied in the Fourteenth Amendment.[4] The court disagrees. The holding of *Graham* is couched in such inclusive language as to make defendants' proposition untenable.[5] *See generally Williams v. Tulsa*

---

3. The amended complaint states: "The substantive claims herein arise under 42 U.S.C. Section 1983, 1985, and the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution." (Am. Compl. at 2).

   Plaintiff's counsel asserts the failure to include the Fourth Amendment was the product of a typographical error: "Because of a typographical error, plaintiff has failed to allege the Fourth Amendment for his excessive force claim against the County Defendants.... [P]laintiff must rely on the *Fourth* Amendment's Due Process Clause which is also applicable under the facts of this case as alleged by the plaintiff." (Pl. Resp. at 13) (emphasis added). Either this sentence is attempting an ironic moment, or, remarkably, the sentence contains a typographical error discussing a typographical error.

4. Prior to the Court's holding in *Graham*, the Tenth Circuit generally reviewed excessive force claims under the substantive due process standard. *See Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990) (considering pre-*Graham* police conduct). Under the due process standard, the following factors were considered: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the government official. *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1379 (10th Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985).

5. Not only does the language of the *Graham* opinion dictate that *all* applicable excessive force claims be construed under the Fourth Amendment's standard, the facts of *Graham*

*Police Dep't*, 66 F.3d 339 (10th Cir.1995) (table) ("the district court correctly pointed out that a claim a law enforcement officer used excessive force in the course of an arrest *must* be analyzed under the Fourth Amendment") (emphasis added). The court will, therefore, transform plaintiff's claim of excessive force as one brought under the Fourth Amendment made applicable via the Fourteenth Amendment. While rare, the court is compelled to take this action to maintain its own analysis-as compared to plaintiff's substantive claims-in accordance with the appropriate authority. *See Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (published opinion) ("We note initially that the district court correctly reclassified plaintiff's claim as one brought under the Fourth Amendment, which prohibits unreasonable seizures of persons, as opposed to the Fourteenth Amendment, which guarantees substantive due process.").

■ As a final matter, the court also finds the Fourth Amendment's analysis appropriate even though plaintiff's claims flow from his detainment post-arrest.· *See Austin v. Hamilton*, 945 F.2d 1155, 1162 (10th Cir.1991) (holding Fourth Amendment applies to excessive force claims arising during confinement but before a defendant is formally charged or brought before a judicial officer), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

Under the "reasonableness" analysis "the question is whether the officers' actions are 'objectively reasonable' in light of

the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865 (internal citations omitted). Three factors, in particular, are relevant to this fact-specific inquiry: (1) the severity of the crime at issue; (2) whether the suspect presents an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resistant or attempting to evade arrest. *Id.* at 396, 109 S.Ct. 1865. With this standard established, the court turns to the facts of the present case to determine if plaintiff has presented a viable excessive force claim.

**2. Application to Facts**

■ Without question, there is considerable dispute over what took place in plaintiff's cell during the early morning hours of October 28, 1998. As noted above, within a summary judgment motion, the court is required to view the evidence in a light most favorable to the non-moving party. In this context, therefore, the court must accept plaintiff's version of what transpired inside his cell. *See Dixon v. Richer*, 922 F.2d 1456, 1458, 1463 (10th Cir. 1991) (affirming a denial of summary judgment when viewing allegations of excess force solely from the plaintiffs' accounting of the facts); *Fordyce v. City of Kansas City, Kansas*, No. 95–2285, 1996 WL 570195, at *4 (D.Kan. Sept.30, 1996) (denying summary judgment in excessive force claim while accepting plaintiff's version of the facts).

Accepting as true plaintiff's description of being beaten into a state of unconsciousness, such activity would appear to be objectively unreasonable.[6] No officer

---

reveal the Court considered the plaintiff's explicit assertion of his Fourteenth Amendment rights under the reasonableness standard. *Graham*, 490 U.S. at 390, 109 S.Ct. 1865.

**6.** The court rejects any assertion plaintiff's claim fails summary judgment because he has not demonstrated a severe physical injury re-

sulting from the alleged excessive force. Under the former substantive due process analysis, courts were encouraged to consider the severity of the injury as an indicator of the severity or excess of police force. *Hannula*, 907 F.2d at 132 ("if the injury is minimal, it is likely that the force creating the injury was

could reasonably find it necessary to severely beat an individual confined to a jail cell and restrained in handcuffs. In any event, at this stage of the analysis,[7] plaintiff must only demonstrate a genuine issue of material fact regarding the reasonable nature of defendants' behavior. In regards to both the beating and the blow to the head, plaintiff has carried this burden.

While the finding would appear to conclude the court's analysis and require a denial of summary judgment, in this case, unfortunately, the analysis is far from over. In particular, the court must pause to consider three additional issues: first, the *personal* liability of the individually named defendants; second, whether the individual defendants are entitled to qualified immunity; and third, the Board of County Commissioners' liability under § 1983.

### 3. Individual Liability

█ Plaintiff brings his claim against the individual defendants in their individual capacities.[8] As mentioned above, plaintiff testified to two attackers, yet he levies his claim against seven deputies. It is well established that for individual liability under § 1983 to attach, a defendant must personally participate in the alleged deprivation. *See Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir.1997) ("individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation"); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a pre-

requisite to an award of damages under § 1983.") (internal citation and quotation marks omitted).

Although only two defendants were directly responsible for the attack, the remaining five may still be liable if they were in a position to prevent the attack but failed to do so. *See, e.g., Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir.1996) (holding it is well established that a police officer has a duty to intervene to prevent use of excessive force by another police officer); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) ("all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence"). *Cf. Universal Calvary Church v. City of New York,* No. 96–4606, 2000 WL 1538019, at *18 (S.D.N.Y. Oct. 17, 2000) (granting summary judgment in excessive force claim by stating "mere presence at the site of a melee involving hundreds of people is not evidence of personal involvement for the purpose of holding individual defendants liable for constitutional violations"). At a bare minimum, therefore, the record must demonstrate that the individual defendants were near plaintiff's cell during his alleged beating. *See Henry v. Board of Leavenworth County Comm'rs,* 64 F.Supp.2d 1042, 1051 (D.Kan.1999) (finding summary judgment appropriate as to defendants shown not to be present at the time of the alleged deprivation). As to several defendants, plaintiff has failed to allege sufficient facts to sustain this minimal burden.

---

also minimal"). Under an objectively reasonable analysis, however, the court declines to use the severity of injury factor as a gatekeeper. *See Lyons v. Shead,* No. 90–4090, 1992 WL 363614, at *5 (D.Kan. Nov. 17, 1992) (Rogers, J.) (noting severity of injury is a nonfactor under the Fourth Amendment's reasonableness standard).

7. The court will reexamine plaintiff's summary judgment burden within the qualified immunity analysis. *See infra* Part IV.B.4.

8. The official capacity claims against defendants Hill and Pulice will be discussed when considering the Board of County Commissioners' liability. *See infra* Part IV.B.5.

First, defendant White's affidavit and accompanying employment records reveal he was off-duty and had no contact with plaintiff during all relevant times associated with plaintiff's claim. (White Aff. at 2). Plaintiff offers no counter affidavit or any other evidence refuting this assertion. Second, the record is wholly devoid of any facts remotely placing defendants Hill or Pulice in the vicinity of plaintiff's cell, or even in the jail, during the times relevant to plaintiff's claim. Third, to the extent plaintiff is attempting to attach individual liability to defendants Hill and Pulice based on their apparent supervisory role over the jail, the court must grant summary judgment. As has been reiterated numerous times, "there is no concept of strict supervisor liability under [§ ] 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir.1996) (internal citation and quotation marks omitted). *See also Brown v. Reardon*, 770 F.2d 896, 901 (10th Cir.1985) (holding a supervisor cannot be held liable under § 1983 on a respondeat superior theory). The court finds no reasonable jury could find these defendants violated plaintiff's constitutional rights, so the court finds summary judgment appropriate for defendants Hill, Pulice, and White.

■ On the other hand, defendants Peterson's, Carlton's, and Russell's affidavits all demonstrate they were present and near plaintiff's cell during the approximate time of plaintiff's alleged beating. While the record contains no affidavit from defendant Tracey, defendant Russell's affidavit sufficiently alleges defendant Tracey was also present.

Although not argued by defendants, the court notes the remaining defendants can not escape liability merely because plaintiff is unable, at this stage of the proceedings, to positively identify which deputies beat him. *See, e.g., Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986) (holding where facts surrounding the alleged beating are disputed and the plaintiff cannot identify any specific officer who beat him, the very presence of a particular officer at the scene may constitute sufficient evidence to infer that the officer participated in the beating); *Smith v. Delamaid*, 842 F.Supp. 453, 459 (D.Kan.1994) (rejecting argument officers could not be liable because the plaintiff was unable to identify which officer abused him); *Jones v. Village of Villa Park*, No. 91–7095, 1993 WL 437415, at *3 (N.D.Ill. Oct. 27, 1993) (denying summary judgment on excessive force claim even though plaintiff's recollection was extremely limited), *rev'd on other grounds sub nom. Jones v. Johnson*, 26 F.3d 727 (7th Cir.1994), *aff'd*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). The issues of the defendants' degree of culpability and plaintiff's credibility are best reserved for trial. Summary judgment is denied as to this issue.

### 4. Qualified Immunity

■ Generally, public officials performing discretionary functions enjoy qualified immunity from personal liability under § 1983 "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Baptiste v. JC Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). On a motion for summary judgment based on a defense of qualified immunity, the relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The burdens within this analysis differ from those the court generally employs

under summary judgment. Once a defendant has asserted the qualified immunity defense, the burden shifts to the plaintiff to demonstrate: (1) "that the defendant's actions violated a constitutional right," *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995), and (2) that the right at issue was clearly established at the time of defendant's action. *Id.* Once the plaintiff has met this two-step burden, the defendant must come forward and demonstrate "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* at 1535.

Much has been written regarding the interplay or overlap of the qualified immunity defense and the general analysis of excessive force claims brought under the Fourth Amendment. Both questions seek to measure an official's actions against a yardstick notched by objective reasonableness. Due to this repetition of analysis, many courts have noted the decreased usefulness of the qualified immunity defense within excessive force cases. *See, e.g., Quezada v. County of Bernalillo,* 944 F.2d 710, 718 (10th Cir.1991) ("[I]n excessive force cases the substantive inquiry that decides whether the force exerted by police was so excessive that it violated the Fourth Amendment is the same inquiry that decides whether the qualified immunity defense is available to the government actor."); *Dixon v. Richer,* 922 F.2d 1456, 1463 (10th Cir.1991) ("[I]n excessive force claims asserted under the Fourth Amendment, the qualified immunity question is usually answered in the Fourth Amendment inquiry.").

Recently, the Tenth Circuit reexamined this interplay, and the circuit court stressed that the redundancy in analysis does not, standing alone, obviate this court's duty to rule on the *legal* question raised by the qualified immunity defense.

*Medina v. Cram,* 252 F.3d 1124, 1131 (10th Cir.2001). In this case, however, the court's analysis under the immunity defense must track with the court's earlier findings under the Fourth Amendment standard. This conclusion is warranted because, unlike in *Medina,* there is great dispute over the material facts substantiating plaintiff's claim. *Cf. id.* ("Because the material facts in this case are undisputed, we must follow the Court's approach to qualified immunity and decide whether the defendants' actions were reasonable as a matter of law."). With such a dispute, the court may not now proceed and rule as a matter of law that defendants are entitled to immunity. As the Sixth Circuit noted in a similar case, "the legal question of qualified immunity is completely dependent upon which view of the facts is accepted by the jury." *Brandenburg v. Cureton,* 882 F.2d 211, 215 (6th Cir.1989). Therefore, summary judgment on the issue of qualified immunity must be denied.[9]

### 5. County's Liability

██ As alluded to above, plaintiff brings his excessive force claim against defendants Hill and Pulice in their individual and official capacities. A suit, however, against a governmental official in his or her official capacity is the equivalent of a suit against the governmental entity. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The court, therefore, considers these claims in solidarity with plaintiff's claim against the Board of County Commissioners ("the County").

The County may be held liable for plaintiff's deprivations only if those deprivations were the result of an unconstitutional policy or custom of the County. *Monell v. Department of Social Servs.,* 436 U.S. 658,

---

**9.** This finding in no way impacts defendants' ability to raise their immunity defense during or after trial once the factual dispute has been settled by the fact-finder.

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A governmental entity may also be liable if "a deliberate choice to follow a course of action·is made from among various alternatives by the official or officials responsible for establishing final policy with re-spect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The court finds summary judgment appropriate, for plaintiff has utterly failed to plead any facts demonstrating his deprivation was the result of, or prompted by, any County policy or custom. Nor has plaintiff alleged any decision by a final policy-maker lead to his deprivation.

In sum, as to plaintiff's excessive force claim, summary judgment is granted in all respects to defendants Hill, Pulice, White, and the County. The claim remains viable for trial as to defendants Peterson, Carlton, Tracey, and Russell.

## C. Inadequate Medical Care

■ Plaintiff's second claim asserts he was deprived of his Eighth Amendment right to be free from cruel and unusual punishment when the County defendants denied him adequate medical care. (Pretrial Or. at 3, 13). Defendants assert this claim is meritless because the Eighth Amendment is only applicable to post-conviction incarcerations. *See Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The court agrees and finds summary judgment to be appropriate.

■ In the alternative, even if the court were to construe the claim as properly asserting plaintiff's rights under the Fourteenth Amendment, the court would still find summary judgment appropriate. The Tenth Circuit has made clear, that " '[u]nder the Fourteenth Amendment's due process clause, pretrial detainees ... are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment.' " *Barrie v. Grand County, Utah,* 119 F.3d 862, 867 (10th Cir.1997) (quoting *Frohmader v. Wayne,* 958 F.2d 1024, 1028 (10th Cir.1992)). "Thus, [plaintiff's] inadequate medical attention claim must be judged against the 'deliberate indifference to serious medical needs' test of *Estelle v. Gamble,* 429 U.S. 97, 104 [97 S.Ct. 285, 50 L.Ed.2d 251] (1976)." *Id.* (quoting *Frohmader,* 958 F.2d at 1028).

The deliberate indifference requirement has two components: (1) an objective component requiring that the pain or deprivation be sufficiently serious and (2) a subjective component requiring that the officials act with a sufficiently culpable state of mind. *Perkins v. Kansas Dep't of Corrections,* 165 F.3d 803, 809 (10th Cir. 1999). An allegation of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis does not establish the requisite culpable state of mind. *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (internal citation and quotation marks omitted). Rather, plaintiff must demonstrate that defendants exhibited deliberate indifference to plaintiff's known and serious medical needs. *Barrie,* 119 F.3d at 867.

Under this standard, it is clear plaintiff has failed to allege facts sufficient to survive summary judgment. First, plaintiff's alleged injuries were not of a serious nature. Plaintiff admits he suffered no "life threatening injuries" while in custody. (Pl. Dep. at 213). Instead, plaintiff merely asserts that while in custody he feared he had suffered serious injuries. (*Id.*). In reality, plaintiff's medical records reveal he suffered only from swelling, bruises, and contusions and was treated with a pain reliever and ice packs. (Defs.Mem.Ex. H). Without allegations of a serious injury, plaintiff's claim fails the objective component.

Second, plaintiff has failed to allege facts demonstrating defendants acted with the required state of mind. In fact, the uncontroverted evidence demonstrates plaintiff received prompt medical care soon after arriving at the jail. In addition, plaintiff was examined again by medical personnel within approximately four hours. Plaintiff's deposition also reveals he never specifically asked any of the named defendants for medical treatment once in custody. (Pl. Dep. at 211). Plaintiff does assert he should have been x-rayed to rule out the possibility of internal bleeding. At most, however, this allegation would support only a finding of negligent care, which falls short of a constitutional deprivation. "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins*, 165 F.3d at 811. Put simply, plaintiff's allegations come up woefully short of asserting a viable claim under the "deliberate indifference" standard, so the court finds summary judgment as to all defendants appropriate.

### D. Punitive Damages

A jury may award punitive damages in a § 1983 case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Defendants argue they are entitled to judgment on plaintiff's punitive damage claim because "[n]o jury could reasonably find that defendants acted with evil motive or callous disregard of the federal rights of plaintiff." (Defs. Mem. at 37). The court disagrees. Without question, if a jury were to accept plaintiff's version of the facts, then a vicious beating by multiple officers on a restrained prisoner could certainly be found to satisfy the imposition of a punitive award. Summary judgment will be denied as to this issue.

### V. CONCLUSION

This case revolves around differing versions of a singular event. Having found the matter in dispute material, the court is compelled to deny, in part, defendants' request for summary judgment. Summary judgment is granted to all defendants on plaintiff's failure to provide inadequate medical care claim. The only claim remaining for trial, therefore, is plaintiff's § 1983 excessive police force claim against defendants Peterson, Carlton, Tracey, and Russell. All other claims against these four defendants and the remaining defendants did not survive summary judgment.

**IT IS THEREFORE BY THIS COURT ORDERED** that defendants' Motion for Summary Judgment (Doc. 50) is granted in part and denied in part. Summary judgment is granted on all claims except plaintiff's excessive police force claim brought pursuant to 42 U.S.C. § 1983 against defendants David R. Peterson, Christopher R. Carlton, Curtis J. Tracey, and Michael Russell.